FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 17 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X

MICHAEL REAPE,

                         Plaintiff,

- against -

CITY OF NEW YORK, et al.,

                        Defendants.

---------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

09 Civ. 1363 (BMC)(LB)

**COGAN**, District Judge.

This is a civil rights action under 42 U.S.C. § 1983 in which plaintiff alleges that he was subjected to excessive force at the time of his arrest. He has sued the two officers he encountered as well as their employer, the City of New York. Before me is the City's motion for summary judgment, in which it argues that plaintiff has failed to produce any evidence of a "policy or custom" that violated his constitutional rights, as required by Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978). I agree and therefore grant the motion.

## BACKGROUND

The parties' statements under Local Rule 56.1 show that they are in agreement both as to the facts that are undisputed and as to those that remain in dispute. The following is undisputed: Defendant Berrios arrested plaintiff on an open warrant and handcuffed him. He then transported plaintiff to the precinct house for processing. While there, plaintiff began to complain about trouble breathing and was taken to the hospital and remained there overnight.

The next morning, defendant Fyffe transported him out of the hospital, again using handcuffs. Twelve days later, plaintiff returned to the hospital complaining of pain in his wrist, and was diagnosed with a right wrist fracture of the largest wrist bone on the thumb side of the hand.

The parties dispute whether the fracture was caused by the handcuffs. Both Berrios and Fyffe testified that they checked the handcuffs to make sure they were not too tight. Berrios testified that he inserted his index finger into the space between the handcuff and wrists to check the tightness (the "finger test"). He also testified that he "double-locked" the handcuffs (that is, set them so that they would neither tighten nor loosen without the key) to make sure they would not tighten. Fyffe testified that when he took custody of plaintiff, he also inserted his finger between the handcuffs and plaintiff's wrists to make sure they were not too tight. Plaintiff, in contrast, testified that neither officer ever checked to see if the handcuffs were too tight. To the contrary, plaintiff's version is that he repeatedly complained to both Berrios and Fyffe that the handcuffs were too tight, and that they ignored his complaints or told him to "shut up."

## DISCUSSION

### I. Standard for Summary Judgment

Summary judgment is appropriate only "where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, the Court's responsibility "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986)). "A dispute regarding a material

2

fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 40-41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248, 106 S. Ct. 2505, and discussing summary judgment's historic origins "as a tool for clearing the calendar of doomed lawsuits"). Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986) (internal quotation omitted).

The moving party bears the initial burden to show that there is no genuine issue of material fact, i.e., to show that the evidentiary support for its position is so strong that no reasonable trier of fact could disagree. Anderson, 477 U.S. at 256-57; see Fed. R. Civ. P. 56(c). Once the moving party has documented particular facts, "the opposing party must 'set forth specific facts showing that there is a genuine issue for trial.'" Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (quoting Fed. R. Civ. P. 56(e)). Although the Court views the evidence in the light most favorable to the non-moving party and draws inferences in its favor, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Industrial Co., 475 U.S. at 586, 106 S. Ct. 1348; see Anderson, 477 U.S. at 247-48, 106 S. Ct. 2505 ("[T]he mere existence of *some* alleged factual dispute between the parties" will not defeat a properly supported motion for summary judgment. (emphasis in original)).

Rule 56(e) requires that the opposing party marshal admissible evidence to rebut that of its opponent; inadmissible hearsay or conclusory assertions are generally insufficient. Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003). As the Supreme Court explained in Anderson, the nonmoving party cannot defeat summary judgment "without offering any concrete evidence

from which a reasonable juror could return a verdict in his favor and by merely asserting that the jury might, and legally could, disbelieve the defendant's denial." 477 U.S. at 256, 106 S. Ct. 2505. Thus, a party may not defeat a motion for summary judgment solely through "unsupported assertions" or "conjecture." Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995); see also Anderson, 477 U.S. at 256, 106 S. Ct. 2505 (citing Rule 56(e)). Rather, the nonmoving party must marshal "concrete evidence from which a reasonable juror could return a verdict in his favor." Id.; see also Fed. R. Civ. P. 56(e).

## II. Federal Claim

The City cannot be held liable in a § 1983 action for the conduct of its officers solely on the basis of *respondeat superior*. See Monell, 436 U.S. at 690-91, 98 S. Ct. 2018; Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983). Rather, to hold the City liable for the unconstitutional actions of its employees, plaintiffs must prove three elements: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Batista, 702 F.2d at 397; accord, Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995).

Plaintiffs can demonstrate that the City had a policy, custom, or practice through either: (1) a formal policy officially endorsed by the City; (2) actions taken by City officials responsible for establishing policies related to the particular deprivation in question; (3) "a practice so consistent and widespread that it constitutes a 'custom or usage' sufficient to impute constructive knowledge of the practice to policymaking officials"; or (4) "a failure by policymakers to train or supervise subordinates to such an extent that it amounts to 'deliberate indifference' to the rights of those who come in contact with [City] employees." Dorsett-Felicelli, Inc. v. Cnty. of Clinton, 371 F. Supp. 2d 183, 194 (N.D.N.Y. 2005) (citing cases). "[A] custom or policy cannot be

4

shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [City]." Newton v. City of New York, 566 F. Supp. 2d 256, 271 (S.D.N.Y. 2008). "As a general matter, a breach of departmental policy does not by itself constitute a constitutional violation." Bowen v. Cnty of Westchester, 706 F. Supp. 2d 475, 489 (S.D.N.Y. 2010) (citing Virginia v. Moore, 553 U.S. 164, 173, 128 S. Ct. 1598 (2008)). Rather, plaintiffs "must demonstrate that, through its deliberate conduct, the [City] was the 'moving force' behind the alleged injury." Roe v. City of Waterbury, 542 F.3d 31, 37 (2d Cir. 2008) (quoting Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382 (1997)).

"[A] city can be liable under § 1983 for inadequate training of its employees . . . only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Canton, 489 U.S. at 388, 109 S. Ct. 1204. To establish a failure to train that constitutes deliberate indifference, the plaintiff must satisfy three elements: (1) "a policymaker knows to a moral certainty that her employees will confront a given situation"; (2) "the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." Jenkins v. City of New York, 478 F.3d 76, 94 (2d Cir. 2007) (internal citations and quotations omitted). However, where a training program is already in place, a plaintiff must also "identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 129 (2d Cir. 2004) (quoting Canton, 489 U.S. at 391, 109 S. Ct. 1206).

5

Plaintiff contends that the City has liability under <u>Monell</u> because (a) it "fail[s] to properly train officers in the proper methods of the use of acceptable, reasonable and limited force" when taking civilians into custody; and (b) it is the "pervasive custom and practice of individual officers of the NYPD" to use unnecessary force.

The question on this motion is whether plaintiff has produced enough evidence to raise an issue of fact as to these allegations, and in addressing it, I will assume plaintiff's version of the facts – that neither officer checked the tightness of his handcuffs and both disregarded his complaints that they were too tight. But having reviewed the record, I cannot find any evidence at all to support the claims that this occurred pursuant to a policy or practice. Plaintiff has offered only the false logic that if his version of the facts is true, then the officers used unnecessary force, and if they used unnecessary force, this must have been pursuant to a policy or practice of the City. However, both Berrios and Fyffe testified that they were well aware that in handcuffing suspects, they should use the "finger test" and the "double-locking" procedure as well.

Plaintiff's attempt to create a policy or practice out of his version of the events shows its logical poverty. First, he points out that while Berrios testified that he learned the "finger test" and "double-locking" test at the police academy, he could not recall if there were any written materials on it; Fyffe wasn't sure if he learned the finger test at the police academy or on the job. I do not see why it matters. Whether learned in an academy or in on the job training, through written handouts or oral instruction, none of these possible versions is consistent with a failure to train; both police officers knew through their jobs how to protect against excessively tight handcuffing. Whether they adhered to that training in this case is for the jury when they appear before it, but in no event is their adherence or non-adherence evidence of a failure to train.

Second, plaintiff points to the City's interrogatory answer that between 2006 and 2007, there were 17 police misconduct cases filed against it that included allegations of excessively tight handcuffing, and he also cites to handful of reported court decisions (which may or may not have been within the list of 17) where such allegations were made. This does not raise any issue of fact. Putting aside my impression that the number is rather small considering the hundreds of arrests that the New York Police Department makes every year, these are just allegations made by a population that is understandably unhappy. Plaintiff has offered no indication that any tribunal – judicial or administrative – has ever found a failure to train or a policy of allowing excessive force based on such allegations. Nor has he shown (and based on this record, he cannot show) that Berrios or Fyffe had a history of using excessive force or even unsubstantiated excessive force complaints which the City chose to tolerate.

Acceptance of plaintiff's "numbers theory" would effectively eliminate the need for any plaintiff to produce hard evidence of a policy or practice; he could just tally up the number of unsubstantiated excessive force claims and present that to a jury. This would eviscerate <u>Monell</u>; it would allow §1983 claims against municipalities to reach a jury whenever the claims against an individual officer reached a jury, as long as the municipality had been sued for excessive force in some number of prior cases. Plaintiff thus has failed to raise a factual issue with regard to the City's liability under §1983.

### III. State Law Claims

The Amended Complaint is ambiguous as to whether, and if so, what, state law claims plaintiff has alleged against the City. The City acknowledges that there is a direct claim for negligent training but does not see a claim for vicarious liability. Plaintiff argues that the First Claim alleges vicarious liability. That Claim states that "[t]he actions of BERRIOS, DOE, AND

7

FYFFE . . . constituted the use of unnecessary force" and concludes that as a result, "Defendants caused Plaintiff to suffer" injuries. Neither this Claim, nor the other two in the Amended Complaint, ever refer to "vicarious liability." Plaintiff nevertheless contends that the reference to "Defendants" in the plural necessarily includes the City because the City is one of the defendants, and the City should have divined that plaintiff would proceed against it based on a theory of vicarious liability.

I reject this argument. Rule 8(a) of the Federal Rules of Civil Procedure requires adequate notice of plaintiff's claims. If plaintiff intended to give notice of a claim for vicarious liability against the City, he failed to do so. The collective noun "Defendants" is used in each of the three counts of the complaint, and plainly refers in each to those defendants who are the subject of that count, not every defendant. Thus, the Second Claim asserts liability under §1983 against the three (including DOE) individual officers, but also concludes by referring to "Defendants" as having "violated 42 U.S.C. § 1983 . . . ." That might give rise to the same ambiguity as the First Claim, except that the Third Claim is limited to allegations against the City – referring to <u>Monell</u> liability and negligent training, not the individual officers – and again concluding by noting that "Defendants violated 42 U.S.C. § 1983." This shows that when plaintiff wanted to allege a claim against the City, he knew how to do so and did so expressly. Indeed, under plaintiff's theory, the Third Claim against the City would be entirely superfluous, because the Second Claim already alleged that "Defendants" violated §1983.

The only point in plaintiff's favor in construing this pleading is that one would ordinarily expect a plaintiff suing police officers to assert a vicarious liability claim against their employer under state law. Rule 8(a), however, is based on notice, not expectations, for it is plaintiff who controls his pleading. The expansive reading of the First Claim that plaintiff suggests would be

particularly inappropriate in that the Third Claim asserted every conceivable basis for liability against the City – the Fourteenth Amendment of the United States Constitution, the corresponding provisions of the New York Constitution, a common law claim for negligent training, and a Monell claim – except a claim for vicarious liability. In addition, if I read the First Claim the way plaintiff would like me to, the City would be prejudiced because it did not move against a vicarious liability claim, and it may well be that it would not have moved at all if it knew it would remain a party in this case under that theory.

That leaves plaintiff's claim for negligent training.[1] It fails for precisely the same reason as the Monell claim. Plaintiff has put in no evidence of what the City's training program is with regard to handcuffs, and thus cannot show that the City was negligent in implementing it. Plaintiff offers no evidence or even argument about what the City should have done that it did not do. That claim is accordingly dismissed as well.[2]

---

[1] The Court has considered whether to decline supplemental jurisdiction over the state law claims, as that is the usual practice when federal claims are dismissed. See United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). However, the claims against the police officers are going to be tried before this Court, and it makes little sense from a judicial economy perspective to have the same operative facts placed before federal and state tribunals. In addition, although the standard of liability for the Monell claim and the state law negligent training claim differ, the record is the same, and this Court has already considered the record in the context of the Monell claim.

[2] Neither side has briefed plaintiff's cursory reference to the New York State Constitution. The Court therefore assumes any such claim is abandoned or subsumed within the ruling on the Monell and common law claims.

## CONCLUSION

The City's motion for summary judgment is granted, and it is dismissed as a party to this action. The remaining claims against the police officers shall proceed to trial as previously scheduled.

**SO ORDERED.**

/s/(BMC)

_____
U.S.D.J.

Dated: Brooklyn, New York
       November 16, 2010